THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARIUS L. WICKS, Defendant-Appellant.

Third District No. 3—03—0308

Opinion filed February 16, 2005.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Jeff Tomczak, State's Attorney, of Joliet (Lawrence M. Bauer, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kurt B. Drain, of Libertyville, for the People.

JUSTICE BARRY delivered the opinion of the court:

The defendant, Darius L. Wicks, was convicted of two counts of resisting a peace officer. 720 ILCS 5/31—1 (West 2000). The trial court sentenced him to six months' conditional discharge on each offense, to be served concurrently. Defendant appeals, contending that: (1) the trial court erred in denying his request to instruct the jury on self-defense; and (2) one of his convictions of resisting a peace officer should be vacated on one-act, one-crime principles. We affirm.

## FACTS

The State charged defendant with three counts of resisting a peace officer. In the first count, the State alleged that defendant "refused to obey James Dietz' orders and resisted the handcuffing procedure." The State subsequently added two other counts that alleged defendant "also resisted Officers Jeremy Harrison and Joseph Egizio."

At trial, Officer Harrison testified that he and his partner, Officer Dietz, were on patrol when he observed a car being parked along a street. He noticed that loud music was coming from the car. Harrison parked behind the car in order to issue the driver a citation for illegal sound amplification.

The driver, who was later identified as defendant, turned the music off and began to exit the car. As defendant was exiting the car, the officers approached him and asked to see his driver's license and proof of insurance. Defendant replied that the officers did not need to see those items and began to walk away.

Harrison grabbed defendant by the elbow and told him to stop. Defendant put his hands in his pockets and pulled away from Harrison. Harrison told defendant he was under arrest, but defendant continued to try to walk away. The officers responded by trying to pull defendant's hands out of his pockets. Harrison testified that he was

afraid because he thought defendant might have a weapon in his pocket.

Defendant managed to keep his hands in his pockets. At that point, Harrison informed defendant that he would be sprayed with pepper spray if he did not comply with the command to remove his hands from his pockets. Defendant stated "f--- you, spray me." Harrison then sprayed defendant with pepper spray. However, defendant still kept his hands in his pockets.

Harrison threatened to strike defendant if he continued to struggle with the officers. Defendant responded by stating "f--- you, hit me." After Harrison hit him twice in the face, defendant removed his hands from his pockets and began "swatting" at Harrison. The officers wrestled defendant to the ground and handcuffed him. Defendant was spitting blood at the officers and trying to kick them. The officers eventually placed defendant in a transport van.

Officer James Dietz testified that defendant was arrested after he refused to produce identification for Harrison. When he was informed he was under arrest, defendant placed his hands in his pockets and refused to be handcuffed. After he was sprayed with pepper spray and struck in the face, defendant removed his hands from his pockets and began flailing at the officers. The officers wrestled defendant to the ground. Defendant then spat blood at the officers and tried to kick them.

Officer Joseph Egizio testified that defendant was on the ground struggling with Harrison and Dietz when he arrived. Egizio helped handcuff defendant.

Defendant testified that he was standing outside his car when the officers approached him. He told Officer Harrison that he did not have his driver's license, but he had an insurance card. As he began reaching into the car for his insurance card, Harrison grabbed him and instructed him to place his hands on the car. Harrison patted him down and ordered him to place his hands behind his back. When defendant asked why he was being arrested, Harrison told defendant not to question him. Defendant then placed his hands in his pockets.

Defendant testified that Harrison sprayed him with mace, but he kept his hands in his pockets because he was upset. Harrison then began hitting him. Harrison also kicked him after the officers took him to the ground. Defendant denied spitting blood at the officers. Defendant testified that he was very agitated and was cursing after being arrested.

Willie C. Tanzy, Jr., testified that he was riding in the car with defendant. They stopped and got out of the car to talk to some friends. Defendant left the car running. He turned the music in his car down

and turned the car off when he saw the police officers approaching. Defendant was standing by the driver's-side door when the officers pulled up to the car.

The officers asked defendant for his driver's license and insurance card. When defendant reached into his car for his insurance card, the officers exited their squad car and patted him down. Defendant "got loud" and asked why he was being arrested. Defendant then placed his hands in his pockets. One of the officers told defendant that he was going to be sprayed with mace. The officer then sprayed defendant with mace and began hitting him in the face. The officers put defendant on the ground and placed him in handcuffs.

At the close of evidence, defendant requested that the court instruct the jury on self-defense. The trial court denied this request, concluding that there was no evidence to support such an instruction. The jury found defendant guilty of the counts that charged defendant with resisting Officer Dietz and Officer Harrison, but not guilty of the charge of resisting Officer Egizio. The trial court sentenced him to concurrent terms of six months' conditional discharge on each conviction.

## DISCUSSION

On appeal, defendant contends that the trial court abused its discretion in refusing his request to instruct the jury on self-defense. Defendant claims that he acted with "passive resistance" in placing his hands in his pockets, thus entitling him to an instruction on self-defense. Defendant also contends the testimony that he flailed at the officers, spat blood at them and tried to kick them was sufficient "active resistance" to warrant an instruction on self-defense.

■ A defendant is entitled to instructions on his theory of the case when there is some foundation in the evidence for the instructions. *People v. Jones*, 175 Ill. 2d 126, 676 N.E.2d 646 (1997). Only a slight amount of evidence is required to justify giving an instruction. *People v. Brown*, 150 Ill. App. 3d 535, 501 N.E.2d 1347 (1986). A trial court's decision with regard to issuing specific jury instructions is reviewed under an abuse of discretion standard. *People v. Garcia*, 188 Ill. 2d 265, 721 N.E.2d 574 (1999).

■ A person may not use force to resist arrest by a known police officer, even if the arrest is unlawful. 720 ILCS 5/7—7 (West 2000); *People v. Williams*, 267 Ill. App. 3d 82, 640 N.E.2d 981 (1994). An exception to this rule is made when the officer uses excessive force. *Williams*, 267 Ill. App. 3d 82, 640 N.E.2d 981. Use of excessive force by a police officer invokes the arrestee's right of self-defense. *Williams*, 267 Ill. App. 3d 82, 640 N.E.2d 981; *People v. Bailey*, 108 Ill.

App. 3d 392, 439 N.E.2d 4 (1982). Therefore, a jury instruction on self-defense is required in a resisting arrest case only where the defendant is unaware of the peace officer's identity or there is evidence that the arresting officer used excessive force. *Williams*, 267 Ill. App. 3d 82, 640 N.E.2d 981.

■ Initially, we find that defendant's act of placing his hands in his pockets does not warrant an instruction on self-defense in this case. The officers had not engaged in any act that could be construed as excessive force at the time defendant placed his hands in his pockets. According to Harrison's testimony, at that point the officers had simply asked for identification and placed a hand on defendant to prevent him from walking away. Defendant testified that the officers patted him down and asked him to place his hands behind his back before he placed his hands in his pockets. The actions of the officers cannot be considered use of excessive force under these circumstances.

The officers did engage in progressively greater use of force as defendant continued to refuse to remove his hands from his pockets. In this regard, we note that Officer Harrison testified he was afraid that defendant had a weapon in his pocket. The officers first tried to physically remove defendant's hands from his pockets by pulling on his arms. When that did not work, they told defendant he would be sprayed with pepper spray if he did not comply. Finally, Harrison struck defendant to get him to comply with the command to remove his hands from his pockets. Given the threat that defendant may have had a weapon, we find that these progressive actions by the officers were not excessive use of force. The officers were entitled to use the force required to protect themselves and effect the arrest. Because the evidence does not show that the officers used excessive force, defendant's right of self-defense was not triggered.

Moreover, there must be some evidence that the defendant acted out of fear for his safety in order to justify a self-defense instruction in these circumstances. See *Williams*, 267 Ill. App. 3d 82, 640 N.E.2d 981; *Bailey*, 108 Ill. App. 3d 392, 439 N.E.2d 4. In this case, there was no evidence that defendant acted out of fear. Defendant testified that he was upset and agitated, but never testified that he was afraid of the officers. Defendant also testified that he cursed at the officers after he was on the ground and handcuffed. According to Harrison, defendant cursed at him and told him to go ahead and mace and hit him. Tanzy testified that defendant "got loud" and asked why he was being arrested. This evidence does not show that defendant was acting out of fear for his safety. Based on these circumstances, we conclude that the trial court did not abuse its discretion in refusing to give an instruction on self-defense.

■ Defendant also contends that one of his convictions of resisting a peace officer should be vacated on one-act, one-crime principles. The State asserts that defendant waived this issue because he did not raise it at trial or in a posttrial motion. Though technically waived, an objection to a surplus conviction may be considered as plain error. *People v. Moshier*, 312 Ill. App. 3d 879, 728 N.E.2d 822 (2000).

A person commits the offense of resisting a peace officer when the person "knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity." 720 ILCS 5/31—1(a) (West 2002). A defendant can be convicted of more than one crime based on different acts in the same event or incident, even if they are interrelated and even when a common act is part of both offenses. *People v. Rodriguez*, 169 Ill. 2d 183, 661 N.E.2d 305 (1996). When a defendant resists numerous police officers who are attempting to arrest him, the defendant can receive multiple convictions commensurate to the number of officers he resisted. *People v. Floyd*, 278 Ill. App. 3d 568, 663 N.E.2d 74 (1996).

Our review of the record reveals that the defendant's act of resisting Officer Dietz was a separate act from the act of resisting Officer Harrison. When asked to produce his driver's license and proof of insurance by Officer Harrison, the defendant refused and began to walk away from the vehicle. Officer Harrison then grabbed the defendant by the right arm and instructed him to stop. The defendant responded by placing his hands in his pockets and pulling away from Officer Harrison. After Officer Harrison told the defendant he was being placed under arrest for obstructing an officer, the defendant started to pull away, to walk away. At this point, Officer Dietz came over from the other side of the vehicle and grabbed the defendant's left arm. Both officers unsuccessfully attempted to pull the defendant's hands out of his pockets. The defendant began to struggle with the officers, culminating in Officer Harrison spraying the defendant with pepper spray and hitting the defendant twice in the face. A further struggle ensued in which the officers wrestled the defendant to the ground and eventually placed the defendant in handcuffs. Under these circumstances, we believe the defendant was correctly convicted of two counts of resisting a peace officer.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

SCHMIDT and O'BRIEN, JJ., concur.