THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD THOMPSON *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—87—3716, 1—87—3736 cons.

Opinion filed December 27, 1991.

Randolph N. Stone, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Bonnie Meyer Sloan, and Donna J. Norton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Following a jury trial, defendants Donald Thompson and Kenne Jordan were found guilty of armed robbery. Thompson was sentenced to 20 years' imprisonment, and Jordan was sentenced to 18 years' im-

prisonment. On appeal, defendants contend that the trial judge made improper comments in the presence of the jury shifting the burden of proof to defendants; that the court violated defendants' due process rights by failing to instruct the jury on the requisite *mens rea* for armed robbery; that the trial court failed to properly conduct the *voir dire* of the jury; that the sentences are improper because the trial court relied on an element inherent in armed robbery; that the sentences are improper because the trial court relied on an improper aggravating factor; that Thompson was denied a fair sentencing hearing; that Jordan is entitled to a new sentencing hearing because the trial court improperly found he lacked remorse; and that the sentences are excessive.

For purposes of expedience, the specific facts pertaining to the trial judge's conduct of the trial and sentencing hearing upon which defendants' contentions on appeal are predicated shall be discussed in the analytical portion of the opinion. Our statement of facts here will be restricted to those relevant facts pertaining to the actual commission of the crime and the identification of defendants.

At trial, Yolanda Jackson testified that on November 16, 1986, at 7:00 p.m., she worked at a Kentucky Fried Chicken restaurant in Chicago. Defendants entered the restaurant and tried to sell Jackson and a co-worker, Lurene Pierce, some jewelry. Thompson asked Jackson for a date. Defendant stood three feet from Jackson and remained in the restaurant for 10 to 15 minutes. When two police officers in uniform entered the restaurant, defendants left.

At 8:30 p.m. on the same day, defendants again entered the restaurant. Jackson took their food order, and Pierce began to pack the food. Thompson then grabbed Jackson's arm and demanded money from the register. Thompson held a gun pointed at Jackson. Jackson turned the money over to Thompson. Jordan reached over the counter and grabbed coins from the register. Defendants were in the restaurant approximately five minutes. When they exited the restaurant, Jackson activated a silent alarm.

Pierce, Jackson's co-worker, testified similarly.

Defendants' two visits to the restaurant were videotaped, and still photographs of the videotape showing defendants at the counter were introduced into evidence.

Jackson testified further that five days later, on November 21, 1986, she went into a pizza parlor next door to the Kentucky Fried Chicken restaurant. Thompson, accompanied by Jordan, happened to be present and approached Jackson, to ask if she remembered him. Jackson recognized them as the men who had robbed the store, but

told defendants that she did not know who they were. Jackson then left the pizza parlor and telephoned the police. When they arrived, she reentered the pizza parlor with the police officers and identified defendants.

Jordan's mother and sister testified on behalf of Jordan that he was home from 8:00 p.m. until midnight on November 16, 1986.

OPINION

Defendants first contend that the trial judge committed reversible error when he made an improper comment in front of the jury. In a side bar, after the State rested its case, the trial court denied defendants' motion for a directed finding, stating that the State had met its burden of proof and the case would proceed to the defense case in chief. At that point, counsel and the judge returned to the presence of the jury, where the court stated:

> "Okay. Accordingly, ladies and gentlemen at this particular juncture it is the opinion of the court that the defense will have to move forward in presenting its case."

Defense counsel immediately moved for a mistrial. The court denied the motion and out of the presence of the jury, stated: "It's appropriate and proper for the court to indicate that the defense must proceed in presenting its case if it sees fit to do so and I see nothing wrong or reversible with that particular statement."

Defendants maintain that the comment could "have only one meaning" for the jurors. "Buried just below the surface of [the] comment is the message: it is the opinion of the court [that] the State has proven its case unless the defense can present some evidence to counter the State's case."

In order for an improper comment by a trial judge to constitute reversible error, the defendant must show that the remark was prejudicial and that he was harmed by the comments. (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 449 N.E.2d 568.) The remark must constitute a material factor in the defendant's conviction. *People v. Brown* (1980), 87 Ill. App. 3d 368, 409 N.E.2d 81.

■■ We find that the propriety of the judge's comment here was at the very least questionable and should have been avoided. While not overtly stating that defendants must go forward with a defense, the remark unnecessarily risked conveying the signal by implication.

The State relies on *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829, in urging that there was no error. In that case, the court found no impropriety where, after the State rested its case on a Friday afternoon, the judge informed the jury that "the taking of evi-

dence would be resumed on Monday," and then asked counsel for one of the defendants if on Monday "he would be ready to start some part of his case." (*Cannon,* 49 Ill. 2d at 166.) The court on appeal held: "We fail to see how the jury could construe the inquiry to mean that the court was of the opinion that the People had proved their case." (*Cannon,* 49 Ill. 2d at 166.) Unlike the present case, *Cannon* involved an *inquiry,* not a statement of the court's "opinion"; involved the possibility of defendant's presenting evidence, not an announcement that defense "will have to move forward in presenting its case"; and involved a statement made to counsel for a codefendant for whom the court later directed a verdict of acquittal.

However, while the judge's comment in this case, unlike those in *Cannon,* creates a much closer question of impropriety, it would clearly not constitute reversible error. Because the State's evidence here was overwhelming, the comment of the trial judge, regardless of its impropriety, could not have been a prejudicial factor in defendants' convictions. Two eyewitnesses identified defendants as the robbers. They viewed defendants in good light for 10 to 15 minutes the first time, and for five minutes the second time, from a distance of three feet. Moreover, the two visits were videotaped and still photographs of defendants standing at the cash register were admitted into evidence. Finally, defendants approached Jackson, in a pizza parlor next door to the Kentucky Fried Chicken restaurant they had robbed five days earlier, and asked if Jackson remembered them. Jackson then offered a positive identification of defendants to the police. In view of this overwhelming evidence which supported the convictions, the remark by the trial judge could not have played a material role in the jury's verdict. Thus any error was clearly harmless. (See *People v. Tucker* (1989), 186 Ill. App. 3d 683, 542 N.E.2d 804 (trial court's improper comments which concerned the burden of proof were harmless error where defendant made no showing of resulting prejudice).) We note further that the jury here was properly instructed on the burden of proof at the end of the trial. See *People v. Cannon,* 49 Ill. 2d at 166.

■ Defendants next contend that the trial court erred in failing to instruct the jury that the State had the burden of proving beyond a reasonable doubt that defendants acted knowingly or intentionally when they robbed the store. Defendants failed to object at trial and, therefore, have waived the issue for purposes of appeal. (See *People v. Roberts* (1979), 75 Ill. 2d 1, 10, 387 N.E.2d 331.) Defendants urge that plain error occurred. (See 134 Ill. 2d R. 451(c).) No plain error oc-

curred here, where the case is not factually close. (See *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180, 415 N.E.2d 1027; *People v. Anderson* (1981), 93 Ill. App. 3d 646, 653, 417 N.E.2d 663.) Moreover, armed robbery is a general intent crime (*People v. Banks* (1979), 75 Ill. 2d 383, 392, 388 N.E.2d 1244), and instructions need not include a description of a specific mental state. *People v. Avant* (1989), 178 Ill. App. 3d 139, 532 N.E.2d 1141; *People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139; *People v. Leonard* (1988), 171 Ill. App. 3d 380, 526 N.E.2d 397.

Defendants next contend that the trial court failed to ask two of the jurors questions during *voir dire* as required under the holding in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062. Defendants assert that the trial judge here failed to question juror Paul Kertay regarding defendants' right not to testify. He also failed to question juror Kim Lang about a defendant's right not to offer any evidence in his own behalf and the State's burden of proving defendants guilty beyond a reasonable doubt.

■ Our review of the record does not agree with defendants' contention regarding Kertay. The trial judge questioned both Kertay and Lang regarding defendants' right not to testify. We agree, however, that the judge failed to ask Lang about defendants' right not to offer any evidence. Contrary to the State's argument, this inquiry was not made unnecessary by the court's general comments to the general venire since the record does not reflect that this specific admonition was ever given to the general venire. Notably, neither defendant here testified; Jordan's defense consisted of his mother's and sister's alibi testimony; Thompson offered no defense.

However, defendants failed to object at trial or include this issue in their motion for a new trial and, thus, have waived the issue for purposes of appeal. *People v. Coleman* (1989), 129 Ill. 2d 321, 340-41, 544 N.E.2d 330; *People v. Holman* (1984), 103 Ill. 2d 133, 181-82, 469 N.E.2d 119; *People v. Thomas* (1989), 186 Ill. App. 3d 782, 542 N.E.2d 881.

Moreover, even if there was no waiver, it would not provide a basis for reversal because even though the error is of constitutional magnitude, the overwhelming weight of the evidence supporting the convictions enables us to find with certainty that this was harmless beyond a reasonable doubt.

Defendants next contend that, in sentencing defendants, the trial court improperly relied on an inherent element of the offense of armed robbery as an aggravating factor. At Jordan's sentencing hearing, the court stated:

"But I'm going to start again with your first premise that there were no threats of violence. Mr. Grzeca [defense counsel], if I had a gun in my hand and I waived [sic] it in front of your face and didn't even open up my mouth, you are not going to stay here and wait and see if there is any threat of violence, you as an individual, you can justifiably anticipate that there is plenty of violence there; if that trigger is pulled and it is a matter of very little pressure that could be put on that trigger to use that gun you may not be here to talk about it later on. *** So I can't see any basis for saying there were no threats of violence *** ."

At Thompson's sentencing hearing, the court noted generally that whatever it had said to Jordan was also applicable to Thompson.

■ These comments, however, were made only after defense counsel argued that no violence or serious harm was involved in this case. Defense counsel argued:

"[T]here was no testimony that would link what the courts have considered serious harm to any act that was committed by Mr. Jordan, meaning, there were no threats of violence from Mr. Jordan, there were no movements, any type of *** exaggerated type of movement toward the victim in this matter, there was no evidence of that. *** [H]ere, there was no serious harm, there was [sic] no physical injuries, there was no testimony as to emotional stress suffered after this incident. So that takes it out of the realm of serious harm.

It is ironic that [the prosecutor] used the word[s] 'some violence' and yet failed to go into any detail as to what that violence was. The words 'some violence' leaves [sic] the court begging for an avenue to inflict a sentence that is proportionate with a violent act."

Thus, the trial judge was merely responding directly to defense counsel's argument at sentencing that there were no threats of violence nor any movement toward the victim. (See *People v. Reid* (1983), 94 Ill. 2d 88, 445 N.E.2d 329 (court's comments as to threat of harm were in response to defense counsel's argument; the comments did not indicate the court considered the threat of harm as an aggravating factor).) No error occurred.

We are unpersuaded by the case defendants cite. (See *People v. Rhodes* (1986), 141 Ill. App. 3d 362, 363, 490 N.E.2d 169 (court vacated a 10-year sentence for armed robbery and remanded for a new sentencing hearing because the trial court had expressly considered the serious physical harm threatened during the robbery).) Unlike the

present case, *Rhodes* did not involve a trial judge responding to argument in mitigation made by defense counsel regarding the absence of violence.

■ Defendants next contend that the trial court improperly considered compensation as an aggravating factor during sentencing. While the State argued in aggravation that defendants received compensation from the robbery, the trial court never referred to that fact. We presume that in imposing sentence on a defendant, the trial judge considers only proper factors. *People v. Heredia* (1989), 193 Ill. App. 3d 1073, 550 N.E.2d 1023.

Defendant Thompson alone contends that "the trial court denied [him] effective assistance of counsel at sentencing when it precluded counsel from presenting evidence and questioning a probation officer." At sentencing, the court noted the presentence report included the phrase: "On advice from his attorney, defendant made no statement."

At the sentencing hearing, the court asked the probation officer to clarify the statement. She testified that she had expressly advised defendant that without his attorney present, it may be in his best interest not to comment on the incident. In an attempt to satisfy the court on this question, counsel for Thompson then sought to question the probation officer.

"[DEFENSE COUNSEL]: May I inquire?

THE COURT: Sure, you may.

[DEFENSE COUNSEL]: On that basis you informed this Defendant, since his Attorney was not here and you proceeded to ask him the questions that you asked at that point, is that right?

THE COURT: Counsel, that is an improper question, that has nothing to do with a pre-sentence investigation.

[DEFENSE COUNSEL]: I don't understand.

THE COURT: I'll answer that question, that has nothing to do with it, any reference to advice of an attorney representing an individual during a pre-sentence investigation. I will ask you not to even go into that. Do you understand that?

\* \* \*

\*\*\* Because as a matter of fact you weren't even the attorney of record at the time and so that question is completely improper for you to ask."

Defendant Thompson now argues that the court's decision "prohibited counsel from fulfilling his duty to his client regarding insuring the accuracy of the presentence report." Thus, Thompson concludes, the

record "clearly demonstrates an abridgement of [his] rights to a full sentencing hearing." Thompson asks that we remand for a new sentencing hearing.

■ We agree with the State's position (which Thompson does not refute in his reply brief) that this is actually an issue regarding the fairness of the sentencing hearing, and not an issue regarding the denial of the right to effective assistance of counsel since counsel, by his attempts to inquire into the matter before he was cut off, demonstrated his effective assistance.

While the sentencing judge was critical of the probation officer for offering this advice to Thompson, there is no indication that the judge relied on the statement in the presentence report in imposing a sentence on Thompson. Thus, it does not appear that any further inquiry would have had any impact on the ultimate sentence since the judge's interest was focused on the propriety of the probation officer's conduct rather than the defendant's conduct. Although it would have been preferable for the court to permit full scope of cross-examination, it is apparent here that there was no abuse since the area in which cross-examination was limited did not pertain to matters material to the imposition of sentence. The character and scope of cross-examination at a sentencing hearing are left largely to the discretion of the trial court, and the court's ruling will not be overturned on appeal absent an abuse of that discretion which results in manifest prejudice to the defendant. *People v. Fields* (1990), 135 Ill. 2d 18, 552 N.E.2d 791.

Next, defendant Jordan alone contends that the trial court improperly stated at the sentencing hearing that Jordan lacked remorse. At the hearing, Jordan stated:

> "I would like to say to you that I have done wrong things at times, you know, I'm really being found guilty of something that I didn't do as it is, and like counsel said, you know, if you can take into consideration, you know, and not give us a whole lot of time for something we haven't done."

The court later stated:

> "Your attorney was talking about remorse. Mr. Grzeca [defense counsel], I don't think I'm going to address myself to that particular aspect because of the nature of the offense before this court. Try as I may, I looked over the facts of this case, I looked over the pre-sentence investigation which is part of Mr. Jordan's case consisting of twelve pages, I can find nothing in any way to reflect upon any remorse by the defendant herein."

██ The trial court is in the best position to evaluate the sincerity of the defendant's remarks. (*People v. Greene* (1981), 102 Ill. App. 3d 933, 430 N.E.2d 23.) In the present case, we cannot say that the trial court's conclusion that defendant lacked remorse was erroneous. Here, it would not have been inappropriate, in light of the overwhelming evidence of defendant's guilt, for the trial court to deem defendant's continued protestations of innocence to be a demonstration of a lack of remorse. See *People v. Greene*, 102 Ill. App. 3d 933, 430 N.E.2d 23 (court rejects defendant's arguments that at the sentencing hearing, the trial court misinterpreted a statement made by defendant as evidence of a lack of a penitent attitude).

In regard to the court's reference to lack of remorse and continued protestation of innocence, our supreme court has held that a defendant's failure to show remorse or a penitent spirit may properly be considered in determining sentences. (*People v. Ward* (1986), 113 Ill. 2d 516, 529, 499 N.E.2d 422.) These factors may be evaluated in light of all other relevant factors. *People v. Ralon* (1991), 211 Ill. App. 3d 927, 960, 570 N.E.2d 742.

██ Defendants next contend that the sentences imposed are excessive. Absent an abuse of discretion, a sentence will not be altered on review. (*People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344.) It is not our function to serve as a sentencing court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The record reveals that the sentencing judge carefully considered all arguments in mitigation and aggravation, and the presentencing investigation reports, including defendants' prior criminal records.

In December 1984, Thompson was convicted of strong arm robbery when he robbed an 84-year-old woman and a 64-year-old woman; he received 30 months' probation. While on probation, in October 1986, Thompson was convicted of attempted robbery; he received 30 months' probation once again. One month later, he committed the armed robbery at issue here.

In February 1982, Jordan was convicted of robbery; he received 60 days' imprisonment and four years' probation. While on probation, in August 1985, Jordan was convicted of theft; he was sentenced to two years' imprisonment. Five months after being paroled, Jordan committed the armed robbery at issue here.

We find no abuse of discretion in the 20-year and 18-year sentences imposed on Thompson and Jordan, respectively. See Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3) (armed robbery is a Class X felony punishable from 6 to 30 years in prison).

Jordan asserted at the sentencing hearing that he "would have took [*sic*] six years a long time ago" if he had actually committed the crime. However, there is no support in the record that any plea offer was previously made. (*Cf. People v. Dennis* (1975), 28 Ill. App. 3d 74, 328 N.E.2d 135 (trial court participated in plea negotiations where defendant was offered two to six years; after trial, court sentenced defendant to 40 to 80 years in prison; appellate court reduced sentence to 18 years).) Defendant has failed to make an affirmative showing in the record that the greater sentence was imposed, *e.g.*, as punishment for exercising his right to trial. See *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 485 N.E.2d 513; *People v. Greene*, 102 Ill. App. 3d 933, 430 N.E.2d 23.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

LORENZ, P.J., and MURRAY, J., concur.